<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JOHN BRANDT, | : | |
| | : | Civil Action No. 11-3557 (FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| LEE ACUFF, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
John Brandt
Anne Klein Forensic Center
West Trenton, NJ 08628

**WOLFSON**, District Judge

    Plaintiff John Brandt, a civilly-committed mental patient confined at Anne Klein Forensic Center in West Trenton, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.  <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

In 2001, Plaintiff was charged, in two indictments, with burglary, criminal mischief, and criminal trespass.  He was subsequently diagnosed with bipolar disorder, manic type with psychotic features, and with an antisocial personality disorder. In 2003, the trial judge found him competent to stand trial on both indictments and not guilty by reason of insanity. Thereafter, he was involuntarily committed and placed on <u>Krol</u>[1] status.  He remains committed and on <u>Krol</u> status as the result of the required periodic reviews.  <u>See generally</u> <u>Brandt v. McQuaide</u>, 2010 WL 5343233 (D.N.J. Dec. 20, 2010) and <u>In the Matter of the Commitment of J.B.</u>, 2009 WL 1658494 (N.J.Super.App.Div. June 16, 2009).

In this Complaint, Plaintiff alleges that he was transferred from Anne Klein Forensic Center to Trenton Psychiatric Hospital

---

[1] <u>See</u> <u>State v. Krol</u>, 68 N.J. 236, 344 A.2d 289 (1975) (detailing periodic review procedures for persons found not guilty by reason of insanity and committed for mental health treatment); N.J.S.A. 2C:4-8(b)(3) ("If the court finds that the defendant cannot be released with or without supervision or conditions without posing a danger to the community or to himself, it shall commit the defendant to a mental health facility approved for this purpose by the Commissioner of Human Services to be treated as a person civilly committed.").

2

on November 30, 2010, where he remained on the Raycroft East-2 unit until April 8, 2011.  Plaintiff alleges that he was locked in the ward and received no mental health treatment during the entire time he was confined at Raycroft East-2, although he was assigned to treatment programs.

More specifically, Plaintiff alleges that he was assigned to Level 1, the most restrictive Level, and that a hospital policy requires a police escort to programs and activities in any other building.  He further alleges that all treatment programs for patients in the Raycroft East-2 unit take place in another building, the Lincoln Complex, but that neither the Hospital Administrators[2] nor Plaintiff's Treatment Team[3] have made any arrangements for him to be escorted to treatment programs in the Lincoln Complex.  Plaintiff alleges that all other Level 1 patients are permitted to attend their treatment programs.

Plaintiff alleges that he met with his Treatment Team once a month, but that there was no treatment to review or assess, as the Treatment Team did not permit him to attend his assigned treatment programs.  Plaintiff alleges that he receive no

---

[2] The "Hospital Administrators" consist of Raycroft Building Administrator Lee Acuff, Trenton Psychiatric Hospital Medical Director Lawrence Rossi, Trenton Psychiatric Hospital Chief Psychiatrist Evan Feibusch, and Trenton Psychiatric Hospital Chief Executive Officer Teresa McQuaide.

[3] The "Treatment Team" consists of defendants Raycroft East-2 Program Coordinator Jackie Porter, Raycroft East-2 Psychiatrist Abdul Kazi, and Raycroft East-2 Psychologist Clint Standweiski.

individual treatment during the time he was housed at Raycroft East-2.  Plaintiff alleges that he complained to the Treatment Team that he was not permitted to attend his treatment programs.

Plaintiff alleges that he told Defendant Jackie Porter that he was going to file litigation against her for failure to protect him from a patient assault that occurred on December 22, 2010, and for failure to provide treatment.  He alleges that after that she and the rest of the Treatment Team treated him as a nuisance.  Plaintiff alleges that this contributed to their failure to provide treatment.

Plaintiff alleges that the Hospital Administrators created and/or continued the policy requiring that Level 1 patients be accompanied by a police escort while moving between buildings to attend treatment programs, while simultaneously failing to provide such escorts for his movement.  Plaintiff alleges that he complained to Hospital Administrator Lee Acuff that he was not receiving any treatment.  Plaintiff does not allege that he told any other Hospital Administrators that he was not being transported to his assigned treatment programs or that he was not receiving treatment.

Plaintiff asserts claims for deprivation without due process of his rights to adequate treatment in the least restrictive setting, of his rights under the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq., and of his rights to equal protection.

4

Plaintiff asserts that the claims for compensatory and punitive damages are asserted against the various defendants in their individual capacities and that claims for protective injunctive relief are brought against the defendants in their official capacities.  (Complaint, ¶ 2.)

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain <u>in forma pauperis</u> and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2) (<u>in forma pauperis</u> actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

5

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  The Twombly pleading standard applies in civil rights actions.

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, ... we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that

> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir.

2008) (citations omitted).

More recently, the Supreme Court has emphasized that, when

assessing the sufficiency of any civil complaint, a court must

distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory

statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." Id. at 1950. Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated. The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions. Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief." In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such
> an entitlement with its facts. See Phillips, 515 F.3d

at 234-35.  As the Supreme Court instructed in Iqbal,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.  <u>SECTION 1983 ACTIONS</u>

Section 1983 provides in relevant part:

Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State
or Territory ... subjects, or causes to be subjected,
any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other
proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48
(1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

Local government units and supervisors are not liable under
§ 1983 solely on a theory of <u>respondeat superior</u>.  <u>See</u> <u>City of
Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v.
New York City Department of Social Services</u>, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution
of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); <u>Natale v.
Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d
Cir. 2003).  "A defendant in a civil rights action must have

9

personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

IV.   ANALYSIS

A.   The "Americans With Disabilities Act" Claim

Plaintiff alleges that all Defendants have violated his rights under the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq., by discriminating against him on the basis of his disability.  In that regard, Plaintiff alleges that Defendants failed to provide him access to his assigned treatment programs thereby excluding him from participating in certain services and programs at Trenton Psychiatric Hospital.

The purpose of the ADA is "to provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1). The statute prohibits discrimination against individuals with disabilities in the areas of employment (Title I); public services, programs and activities (Title II); and public

10

accommodations (Title III).  <u>See generally</u> <u>Tennessee v. Lane</u>, 541 U.S. 509, 516 (2004).  Only Title II is arguably applicable here.

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, provides that "no qualified individual with a disability shall, <u>by reason of such disability</u> be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (emphasis added).[4]  Covered public entities are defined to include state and local governments and their agencies and instrumentalities. 42 U.S.C. § 12131(1).

Private citizens are authorized to bring suit for damages against such state and local governments, their agencies and instrumentalities, and state officers in their official capacities.  42 U.S.C. § 12133.

> To establish a violation of Title II of the ADA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits,

---

[4] "Qualified" disabled persons include those who "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2). For purposes of this discussion, the Court will assume that Plaintiff is a qualified disabled person within the meaning of the statute.

> or discrimination was by reason of his disability.  <u>See</u>
> 42 U.S.C. § 12132; <u>Robertson v. Las Animas County</u>
> <u>Sheriff's Dep't</u>, 500 F.3d 1185, 1193 (10th Cir.2007).

<u>Lopez v. Beard</u>, 333 Fed.Appx. 685, 687 n.1(3d Cir. 2009).[5]

Here, the <u>facts</u> alleged in support of the ADA claim are that Plaintiff suffers from a mental illness, that he was assigned to Level 1 (the most restrictive level), that Level 1 patients are required to be accompanied by a police escort to treatment programs in other buildings, that all of his treatment programs are in another building, that all other Level 1 patients receive a police escort to treatment programs in other buildings while he does not, that his Treatment Team and Building Administrator Lee Acuff were aware that he was not being transported to his treatment programs, and that the Treatment Team consider him a nuisance because of his litigiousness.

As a preliminary matter, Plaintiff may not proceed against any of the named defendants, in their individual capacities, for monetary damages.  As Plaintiff has explicitly stated that he is proceeding against these defendants for monetary damages in their individual capacities, those claims for monetary damages will be dismissed with prejudice.

---

[5] Individual liability is not available for discrimination claims brought under Title II of the ADA.  <u>Emerson v. Theil College</u>, 296 F.3d 184, 189 (3d Cir. 2002) (noting that "individuals are not liable under Titles I and II of the ADA") (citing <u>Garcia v. S.U.N.Y. Health Sciences Ctr.</u>, 280 F.3d 98, 107 (2d Cir.2001) (holding Title II does not allow suits against individuals).

Moreover, with respect to any claim for injunctive relief, Plaintiff has failed to allege <u>any</u> facts suggesting that he was deprived of program participation "by reason of" his disability, that is, his mental illness.  To the contrary, the <u>only</u> factual allegation regarding the reason for depriving him of transport to his programs was that the Treatment Team members considered him a nuisance because of his litigiousness.  Thus, the ADA claim for injunctive will be dismissed without prejudice for failure to state a claim.

B.   <u>The "Due Process" Claims</u>

Plaintiff alleges that all Defendants have deprived him of liberty without due process by violating his rights to appropriate treatment and to treatment in the least restrictive setting.

"Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." <u>Foucha v. Louisiana</u>, 504 U.S. 71, 79 (1992) (citing <u>Jones v. United States</u>, 463 U.S. 354, 368 (1983) and <u>Jackson v. Indiana</u>, 406 U.S. 715, 738 (1972)); <u>see also</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307, 324 (1982); <u>Jackson v. Indiana</u>, 406 U.S. 715, 738 (1972)).

In <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982) the Supreme Court evaluated the substantive Fourteenth Amendment liberty interests retained by civilly-committed mental patients.  The Court held

that involuntarily-committed mentally retarded persons retain
substantive liberty interests in adequate food, shelter,
clothing, and medical care, Youngberg, 457 U.S. at 315, as well
as in safety, freedom of movement, minimally adequate or
reasonable training to ensure safety, and freedom from undue
restraint. Id. at 317-19.

These interests, however, are not absolute. Youngberg, 457
U.S. at 319-20. "In determining whether a substantive right
protected by the Due Process Clause has been violated, it is
necessary to balance "the liberty of the individual" and "the
demands of an organized society." Id. at 320 (quoting Poe v.
Ullman, 367 U.S. 497, 542 (1961)(Harlan, J., dissenting)). In
seeking this balance, a court must weigh "the individual's
interest in liberty against the State's asserted reasons for
restraining individual liberty." Id. In Youngberg, balancing
the interests of the State against the rights of involuntarily
committed mentally retarded persons to reasonable conditions of
safety and freedom from unreasonable restraints, the Court
adopted the standard advocated by a concurring judge, below, that
"the Constitution only requires that the courts make certain that
professional judgment in fact was exercised. It is not
appropriate for the courts to specify which of several
professionally acceptable choices should have been made." 487
U.S. at 321 (quoting 644 F.2d 147, 178 (3d Cir. 1980) (Seitz,

14

C.J., concurring)).  Thus, even when treatment decisions violate
a protected liberty interest, such decisions made by a qualified
professional are presumptively valid;

> liability may be imposed only when the decision by the
> professional is such a substantial departure from
> accepted professional judgment, practice, or standards
> as to demonstrate that the person responsible actually
> did not base the decision on such a judgment.  In an
> action for damages against a professional in his
> individual capacity, however, the professional will not
> be liable if he was unable to satisfy his normal
> professional standards because of budgetary
> constraints; in such a situation, good-faith immunity
> would bar liability.

457 U.S. at 323 (footnote omitted).

Although the Supreme Court delineated in <u>Youngberg</u> certain
substantive liberty interests that arise directly under the
Fourteenth Amendment, other liberty interests may be created by
state law.  <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983);
<u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir.
1999).  New Jersey has enacted legislation providing that every
individual who is mentally ill is entitled to fundamental civil
rights and to medical care.  N.J.S.A. 30:4-24.1.  New Jersey also
has enacted a "bill of rights" for civilly-committed mental
patients, which includes the rights to be free from physical
restraint and isolation, to the least restrictive conditions
necessary to achieve the purposes of treatment, to privacy and
dignity, <u>etc.</u>  N.J.S.A. 30:4-24.2.  The New Jersey patients' Bill
of Rights creates liberty interests in treatment in the least

15

restrictive conditions necessary to achieve the purposes of that treatment.  See, e.g., Scott v. Plante, 691 F.2d 634, 639 (3d Cir. 1982) ("At least since the passage of N.J.Stat.Ann. 30:4-24.1 in 1965, and those cases which interpret this provision, the state has an affirmative obligation to treat those mentally ill individuals who are committed to its institutions. Each patient is also entitled to 'the least restrictive conditions necessary to achieve the purposes of treatment.'"); Matter of Commitment of J.L.J., 196 N.J. Super. 34 (App. Div. 1984) (holding that N.J.S.A. 30:4-24.2(e)(2) creates a liberty interest in "least restrictive" conditions subject to due process protection), certif. denied, 101 N.J. 209, 210 (1985).  See also N.J.S.A. 30:4-27.1, setting forth the legislative findings regarding the State's responsibility to provide care, treatment, and rehabilitation services to mentally ill persons who are disabled.

Here, Plaintiff's factual allegations that his Treatment Team and Building Administrator Lee Acuff knew that he was assigned treatment programs but failed to transport him to those treatment programs, and that he was simply locked in Roycroft East-2 for four months, are sufficient to state a claim for deprivation without due process of his liberty interests in treatment and in the least restrictive setting for such treatment.

16

However, the Complaint fails to make any factual allegations that the other Hospital Administrators - Lawrence Rossi, Evan Feiubusch, or Teresa McQuide - had any knowledge of Plaintiff's circumstances or any direct participation in his treatment decisions.  As noted above, Plaintiff cannot sue these administrators on a theory of vicarious liability.  Accordingly, the due process claims will be dismissed as against these defendants.

C.   The "Equal Protection" Claim

Plaintiff alleges alternatively that the Defendants have violated his Equal Protection rights by denying Level 1 patients the same level of treatment as patients on Levels 2 and 3 (Complaint, ¶¶ 21, 23, 31) and by denying him the same level of treatment as all other Level 1 patients in the hospital, because of the policy requiring a police escort to treatment programs in other buildings (Complaint, Count IV).[6]

---

[6] Pursuant to the New Jersey Administrative Code:

The Levels of Supervision System is not a treatment modality or a system of earned privileges.  It is a mechanism to be utilized in making a clinical determination as to the degree of structure and supervision necessary for each patient to successfully participate in treatment and rehabilitation programs, while maintaining a safe and secure therapeutic milieu for patients and staff alike.

N.J.A.C. 10:36-1.1(a).  Patients who warrant Level 1 supervision "are those who pose a serious risk of harm to themselves, others or property were less supervision provided ... ."  N.J.A.C. 10:36-1.5(a).  By regulation of the Department of Human Services, all attendance at off-ward programs by Level 1 patients must be

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (emphasis added).

Moreover, it is well settled that the Equal Protection Clause "protect[s] persons, not groups," Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995) (emphasis omitted), and that the Clause's protections apply to administrative as well as legislative acts, see, e.g., Raymond v. Chicago Union Traction Co., 207 U.S. 20, 35-36 (1907). Thus, in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), the Supreme Court recognized that an equal protection claim can in some circumstances be sustained, even if the plaintiff has not alleged class-based discrimination, but instead has alleged that he has been

_____

staff escorted. N.J.A.C. 10:36-1.5(b).

irrationally singled out as a "class of one."  To proceed on such a claim, the plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id.  "[A]t the very least, to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006).

Here, in a completely conclusory fashion, Plaintiff has attempted to assert both class-based (Level 1 patients) and class-of-one equal protection claims.  With respect to neither, however, has he alleged facts demonstrating that he is similarly situated, for purposes of transportation to off-ward programs, either to patients at other levels of supervision or to other Level 1 patients.

To the contrary, the Levels of Supervision System regulations clearly explain that Level 1 patients are not similarly situated to patients at other levels of supervision, based on rational clinical considerations.  As for other Level 1 patients, Plaintiff has failed to assert any facts regarding any other Level 1 patients at Trenton Psychiatric Hospital, including any facts that might relate to their transportation from building

to building.  As the Complaint is devoid of any factual allegations that would raise Plaintiff's right to relief under the Equal Protection Clause "above the speculative level," the Equal Protection claims will be dismissed.

## V.   CONCLUSION

For the reasons set forth above, the Due Process claim may proceed as against Defendants Lee Acuff, Jackie Porter, Abdul Kazi, and Clint Standweiski.  All remaining claims will be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim.

However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome certain deficiencies noted here, the Court will grant Plaintiff leave to file an amended complaint.[7]

An appropriate order follows.

_____

[7] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

                                                  /s/ Freda L. Wolfson
                                              Freda L. Wolfson
                                              United States District Judge

Dated:   February 29, 2012